## MCPHERSON *v.* STATE.

### [86 South. 854, No. 21351.]

1. CRIMINAL LAW. *Court may "enter" order for view by making it and leaving ministerial acts to clerk.*

    Under the provision of section 2720, Code 1906 (Hemingway's Code, section 2213), the court is authorized to repair to the place at which any material fact in the case on trial occurred, after the judge thereof has discharged the judicial function of making the order therefor, leaving the ministerial act of spreading the order on the minutes to be afterwards performed by the clerk.

2. CRIMINAL LAW. *Admissibility of evidence not considered in absence of objection below.*

    An objection to the admission of evidence made in the supreme court for the first time will not be considered.

3. CRIMINAL LAW. *Error in admission of testimony cured by subsequent admission of fact.*

    An error in the admission of testimony is cured if the party affected thereby afterwards admits the fact which it tends to establish.

APPEAL from circuit court of Leflore county.

HON. D. E. BEAMS, Judge.

Peggy McPherson was convicted of murder, and she appeals. Affirmed.

See, also, 83 So. 684.

*Monroe McClurg,* for appellant.

The distinguished assistant attorney-general, Mr. Hemingway, points out in his brief on behalf of the state that the first point for decision is: "The fact that the court failed to enter the order for view of the premises before leaving the courtroom."

That is our first assignment of error. While counsel for the state postpones his argument of that assignment until he has argued other assignments, it is preferred here to briefly answer his defense of the first error assigned. He presents the proposition tersely by inquiring whether it is a "jurisdictional requirement," and secondarily whether the order for the view ought to have been entered before the view, or whether it could have been omitted then and entered at any time during the trial.

There is no dispute found in the record of the fact that the order was not entered before the view, nor at any time during the trial. It was not entered until the trial was over, verdict of guilty returned, the jury discharged and the defendant sentenced. The order appeared on the minutes for the first time the next morning after the trial, and then strangely enough interloped in negligent recital of the life sentence.

The extremity to which the state is driven by this assignment is disclosed by the labored effort of its able counsel first, to justify the error by certain facts that transpired during the view, and next by the evidently painful effort to justify it by decisions of this honorable court on the errors and omissions of justices of the peace, who of course, have never had any jurisdiction of felonies, save that of commitment. Indeed, so hard pressed is the state's able counsel, that at page 8 of his brief, he cites and quotes as his strongest authority, the civil controversy between Maurice Winner and Edward C. Williams. Landlord and Tenant, 82 Miss. 669, (672), in which this court declined to disturb the finding of the circuit judge on a question of fact on the hearing of a motion to dismiss an appeal from

a judgment by a justice of the peace.    That proposition might be applicable in defense of counsel's clerk in erroneously noting that opinion was on page "693" of the report instead of being on page 669, but it is *in extremis* of argument to urge that the life of a human being is to be tried by such weak and wavering balance.    And, if it were possible to further disclose the embarrassment of counsel, and it is meant to criticise him only for his energy, zeal and ability to make the most of his case in proper way, he is finally forced by the record before him to say:

"The court, in the instant case, must have said something in response to the motion of the district attorney. That something did find a place on the minutes.    The court made a pencil memorandum on his docket after the return from the view."    He meant to say, that it found a pencil noted place on his docket after a colloquy between the court and the district attorney.

Well, what was that "something said?"    It was the motion of defendant's counsel who had timely enough objected to the view when about to be ordered, then by moving the court to enter a mistrial because of the burlesque view.    Nor is that all.    How come the justice of the peace "pencil memorandum" entered on the judge's trial docket?    At the urgency and persistency of the district attorney who was writting under his own and the court's fatal error; he felt the sting of the motion.

It is now most confidently believed, not urged, for urgency is not needed, that this court will not accept the excuse for the district attorney and the trial judge made by the state here as a sufficient substitute for a solemn statute which not only requires the pre-entry of the order, granted over the objection of the defendant, but in truth, the order should have been first spread upon the minutes. The entry was not a mere ministerial act as insisted by the state, but was essentially a jurisdictional requirement as hereinafter pointed out.

*Wm. Hemingway,* for the state.

Appellant's brief correctly states what happened so it will not be necessary to again repeat the view of the scene of the killling, which is provided for in Code of 1906, section 2720 (Hemingway's Code, 2213). The question for decision is: Is this a jurisdictional requirement? And could it be entered any time during the day upon the minutes of the court? The order ought to have been entered; the question is, when?

The statute under review here is Code of 1906, section 2720 (Hemingway's Code, 2212). The motion of the district attorney is set out on page 50. Page 51 shows the following: "The following evidence was taken at the scene of the alleged homicide in the presence of the court and jury and other court officials, to-wit:"

Page 56 shows the following: "The court and jury here returned to the courtroom and Mr. Joe Williams was recalled by the defendant for further cross examination and testified as follows:"

When the state rested, the defense promptly made their motion raising the point of the failure to enter proper order. It is conceded that no entry was made on the docket of the court or the minutes of the clerk until after this motion by the defendant. The record shows that the district attorney made the motion for the view, and that the proceedings were had at the scene of the homicide. There must have been some order or permission of the court to have gone or the proceedings would not have been had. This brings us to the consideration of the words, "after such order is entered, etc." It will be noted that this statute provides that the court shall remain in session, the necessity of the statute is to permit court to be held outside of the courthouse. In the copying of the minutes, which are in the nature of a journal, of proceedings, the rule that the law recognizes no part of the day would be good in this case. The clerk, if he had the minutes ready for the signature of the judge had done all he was required to do.

In *Lunenberger* v. *State*, 74 Miss. 379, the justice of the peace made a notation of his judgment but did not actually enter it up for two days after it was rendered. This was not considered as reversible error. The court is referred to the special line of reasoning. Evidently court had adjourned and the clerical part was all that was necessary. See, also, on the same point *Holly* v. *State*, 74 Miss. 878. But a still stronger case is *Winner* v. *Williams*, 82 Miss. 693. In this case the justice of the peace did not approve the bond for appeal until after the five days allowed for appeal had expired. It had been shown that the bond was filled in time. This was a civil case and in it the court said: "It was the duty of the circuit court to see that the law was specifically complied with, and rights of litigants are not prejudiced by technical errors of the inferior court, whether accidental or intentional."

The court, in the instant case, must have said something in response to the motion of the district attorney. That something did find a place on the minutes. The court made a pencil memorandum on his docket after the return from the view.

Appellant cites the case of *McLean* v. *Davis*, 18 L. R. A. 634, in which the limited jurisdiction of the justice of the peace was passed upon as to a *nunc pro tunc* order after two years had elapsed from the rendition of the judgment thereon and was brought in review by the issuance of an execution. Like the present case, it is based upon the statute. There is nothing at all in that record to show any action by the court. In the instant case the court did go to the scene with the proper officials on a motion of the district attorney. The entry was made in the presence of all parties concerned. The entry was a ministerial act and could have been entered upon the minutes any time during that day.

The dissenting opinion of Justice Branon in the *Mc-Lean Case, supra,* gives the discussion of that case which goes farther than the majority opinion in considering additional points, and is in line with the case cited above in

this brief where the justice of peace was allowed to enter his approval on the bond after the time for appeal had elapsed. The intent of our statute is to show why the court adjourned to a place not designated in law for the courts to meet. A formal announcement was made by the judge. It then became necessary for the clerk to enter the order on the minutes for that day. Not all the procedures or organized bodies are entered immediately. But if the minutes for the day do not show the correct orders then procedure for correction with due notice to all parties would be proper. Many are sent to jail by magistrates before the judgment is entered. Municipal and county boards frequently adjourn before their minutes are written up. Legislatures have passed into history before their journals are complete although various things are required to be entered upon the journals of the two houses. Defendant was not prejudiced by the delay in entering this order. There was no objection until the return to the courtroom. Of course the defendants had the right to avail themselves of what they considered their right at the time they saw fit, and are not subject to criticism therefor. No injustice has been done to defendant. Everything required by law was done and the jury were judges of the facts which were submitted under proper instructions, and they found against the defendant.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a conviction of murder. The court below committed no reversible error in making any of the rulings complained of, only one of which will be here specifically set forth. The court below during the progress of the trial, and at the request of the district attorney, proceeded to the place at which the homicide was committed, and while there certain testimony was taken at the instance of the state other than such as is permitted by section 2720, Code of 1906 (Hemingway's Code, section 2213), under which the view of the place at

which the homicide occurred was had. On the return of the court to the courtroom, and after the state had finished its introduction of evidence, the appellant called the attention of the court to the fact that no order had been entered providing for a view of the place at which the homicide occurred, and moved the court: First, to exclude all of the evidence that had been introduced by the state; and, second, to discharge the jury and enter a mistrial, for the reason that the court proceeded to the place where the homicide occurred before the order providing therefor had been entered on the minutes. Both of these motions were overruled, and the order for the view was afterwards entered on the minutes of the court.

The statute provides:

That "the court may, at its discretion, enter an order providing for" a view or inspection of the place at which the offense is charged to have been committed, and that "after such order is entered, the whole organized court, consisting of the judge, jury, clerk, sheriff, and the necessary number of deputy sheriffs, shall proceed, in a body, to such place or places, property, object or thing to be so viewed or inspected, which shall be pointed out and explained to the court and jury by the witnesses in the case, who may, at the discretion of the court, be questioned by him and by the representative of each side at the time and place of such view or inspection, in reference to any material fact brought out by such view or inspection."

The contention of the appellant is that the order providing for the view of the place where the homicide occurred should have been entered on the minutes of the court before the view was had, and that because the order was not so entered all of the proceedings had at the place where the homicide was committed were *coram non judice.*

It is no part of the duty of the judge of a circuit court to enter orders and judgments rendered by him on the minutes of his court. The entering of judgments, orders and decrees on the minutes of the court is a mere ministerial

act which is committed by section 1007, Code of 1906 (section 727, Hemingway's Code), to the clerk of the court, and the clerk complies with his duty relative thereto by entering all orders and judgments made by the judge "in the minute book of the court, against the next sitting of the court, if practicable;" it being utterly impossible for the minutes of the court to be kept so as to permit the entering of each order, judgment, or decree immediately after its rendition.

Ordinarily to enter an order means to spread it at large on the minutes of the court, but it is hardly possible that the legislature intended to use the words "enter" and "entered" in the statute here under consideration in that sense when so to do would, without any reason therefor, impose upon the judge a mere ministerial duty which could be more properly, and in all other cases must be, discharged by the clerk. These words evidently are used in the statute in the sense of "make" and "made," and the court below therefore was authorized to repair to the place of the homicide after the judge had discharged the judicial function of making the order therefor, leaving the mere mechanical or ministerial act of spreading the order on the minutes to be afterwards performed by the clerk in accordance with section 1007, Code of 1906 (Hemingway's Code, section 727). No error was committed in overruling these motions.

While the court was at the place at which the homicide occurred several witnesses testified to facts brought out by the view. One of these witnesses also testified, in response to questions propounded to him by the district attorney, that he went to the place of the homicide immediately after it occurred, and that the appellant there told him that she killed the deceased.

The deceased was shot from a window of the house in which the appellant lived, but the evidence on the part of the state, other than that of the witness here in question, as to the identity of the person who fired the shot, was circumstantial. The appellant, when she came to give

testimony, admitted that she killed the deceased, but claimed that she killed him in self-defense. One of the appellant's contentions is that this admission by the appellant that she killed the deceased should not have been admitted at the place of the homicide for the reason that it is not of the character of evidence permitted by the statute to be there taken. This contention cannot be sustained for two reasons: First, the record does not disclose that any objection was made to this evidence in the court below; and, second, if error was committed by admitting the evidence, it was cured when the appellant afterwards admitted that she killed the deceased.

*Affirmed.*